## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| MAKAYLA CUNNINGHAM, individually and on behalf of all others similarly situated,<br><br>                              Plaintiff,<br><br>     v.<br><br>INTERCONTINENTAL HOTELS GROUP RESOURCES, LLC,<br><br>                              Defendant. | Civil Action No.:<br><br>**COMPLAINT - CLASS ACTION**<br><br>JURY TRIAL DEMANDED |

Plaintiff Makayla Cunningham brings this action on behalf of herself, and all others similarly situated against Intercontinental Hotels Group Resources, LLC ("IHG" or "Defendant"). Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to the allegations specifically pertaining to herself, which are based on personal knowledge.

## <u>NATURE OF THE ACTION</u>

1.      This is a class action seeking monetary damages, restitution, and declaratory relief from Defendant IHG arising from the unfair and deceptive practice of using drip pricing to hide junk fees from consumers, and misleading consumers into believing that IHG hotel rooms are cheaper than they actually are.

2.      IHG is an international hospitality company that owns and operates thousands of hotels and resorts worldwide, including numerous destinations in New York and Pennsylvania.

3.      For years, IHG has used unlawful trade practices sometimes called "drip pricing" to market and advertise its hotel rooms, including on online travel agencies ("OTA") and other third-party websites. Rather than disclose the full price of a hotel room up front, IHG baits a

consumer into believing they are getting a lower price for a hotel room by listing a price on the search page that excludes additional taxes and fees. Before a consumer checks out, they are ambushed by expensive fees significantly increasing the total cost of a hotel room. Furthermore, these fees are hidden in a vague line items on the checkout screen labeled as "Taxes & Fees" and are only shown to consumers after they have clicked through numerous pages.

4.    What's more, consumers are never shown how much money they are paying towards fees and how much they are paying towards taxes. Instead, these amount stay bundled as one lump sum on the checkout page and in the receipt consumers receive after purchasing a hotel room.

5.    The Federal Trade Commission ("FTC") recently passed the Rule on Unfair or Deceptive Fees (the "Rule"), which went into effect on May 12, 2025, prohibiting these fees—commonly known as "junk fees" —as well as the practice of drip pricing.

6.    Specifically, "[t]he Rule prohibits bait-and-switch pricing and other tactics used to hide total prices and mislead people about fees in the live-event ticketing and short-term lodging industries."[1]

7.    "Drip Pricing" allows companies like IHG to capture consumers seeking out bargains by tricking them into believing they are paying lower prices before adding fees later on in the shopping process. Drip pricing robs consumers of the right to know the actual rate they are paying for a hotel and denies them the opportunity to fairly compare hotel rates.

8.    Consumers are more likely to pay a higher price when a company engages in drip pricing and IHG has profited enormously from these practices.

---

[1] *FTC Rule on Unfair or Deceptive Fees to Take Effect on May 12, 2025*, FEDERAL TRADE COMMISSION (May 5, 2025), https://www.ftc.gov/news-events/news/press-releases/2025/05/ftc-rule-unfair-or-deceptive-fees-take-effect-may-12-2025.

9.    Plaintiff relied on Defendant's false and misleading misrepresentations that IHG's prices were lower than they actually were. Plaintiff, Class Members, and Pennsylvania Subclass Members would not have booked an IHG hotel room had they known the true price of the room when they first saw it listed.

10.    For these reasons, Plaintiff seeks relief in this action individually, and on behalf of all other purchasers of Defendant's hotel rooms that were similarly marketed, for actual and/or statutory damages, reasonable attorneys' costs and fees, and injunctive relief.

## JURISDICTION AND VENUE

11.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one class member is a citizen of a state different from Defendant.

12.    This Court has personal jurisdiction over Defendant because Defendant conducts substantial business within Pennsylvania and operates hotels throughout the Eastern District of Pennsylvania.

13.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## PARTIES

14.    Plaintiff Makayla Cunningham is an individual consumer who, at all times material hereto, was a citizen and resident of Philadelphia, Pennsylvania. On April 23, 2023, Plaintiff purchased a room for two nights at the Holiday Inn Manhattan 6th Avenue Chelsea, an IHG hotel. Plaintiff booked the hotel room through the online travel agency hoteltonight.com while she was at home in Pennsylvania. When Plaintiff found the hotel's listing on the Website, she was shown

a price she believed was the actual amount she would have to pay for the hotel room. However, once Plaintiff navigated to a checkout screen, Defendant added additional fees and taxes to the total price. This total price was more than the original advertised price. Defendant also combined the taxes and fees into one lump sum, not only on the checkout page but also in the receipt Plaintiff received after booking Defendant's hotel room. The transaction flow process she viewed on Defendant's website was substantially similar as that depicted in Figures 1 through 5 in this Complaint.

15.     Defendant InterContinental Hotels Group Resources, LLC is a Delaware limited liability company with its principal place of business at 3 Ravinia Drive, Suite 100, Atlanta, GA, 30346. Defendant operates hotels throughout the United States, including in New York and Pennsylvania and lists these hotels on third party websites.

## RELEVANT FACTUAL ALLEGATIONS

### *Drip Pricing and Junk Fees*

16.     For years, the hotel industry has deceived its consumers through drip pricing strategies by advertising low prices for rooms, then adding hidden junk fees right before consumers check out.

17.     According to the FTC, "Drip Pricing is a pricing technique in which firms advertise only part of a product's price and reveal other charges later as the customer goes through the buying process."[2] Consumers are shown one price when they initially view a product and then as they check out are barraged with numerous, "junk fees" which significantly increase the total cost of a product.

---

[2] *The Economics of Drip Pricing*, FED. TRADE COMM'N (May 21, 2012), https://www.ftc.gov/news-events/events/2012/05/economics-drip-pricing.

18.     Junk fees are fees that a seller requires a consumer to pay but is not transparently disclosed to consumers. According to the White House Council of Economic Advisors, junk fees "lur[e] in consumers with the promise of a low price, but when they get to the register, they discover that price was never really available." Further, these fees "harm consumers and actively undermine competition by making it impractical for consumers to compare prices, a linchpin of our economic system."[3]

19.     In 2012, the FTC warned the Hotel industry that drip pricing as it pertains to charging resort fees and other surcharges violates consumer protection law when hotels misrepresent the price consumers pay for their hotel rooms.[4] Despite this warning, hotel companies have continued to charge hidden, junk fees to consumers both on their own websites and on OTAs.

20.     On May 12, 2025, the FTC Rule went into effect as a final trade regulation rule. The Rule "specifies that it is an unfair and deceptive practice for businesses to offer, display, or advertise any price of live-event tickets or short-term lodging without clearly, conspicuously and prominently disclosing the total price."[5]

21.     "The rule further specifies that it is an unfair and deceptive practice for businesses to misrepresent any fee or charge in any offer, display, or advertisement for live-event tickets or

---

[3] *The Price Isn't Right: How Junk Fees Cost Consumers and Undermine Competition*, THE WHITE HOUSE (Mar. 5, 2024), https://bidenwhitehouse.archives.gov/cea/written-materials/2024/03/05/the-price-isnt-right-how-junk-fees-cost-consumers-and-undermine-competition/#:~:text=%5B2%5D%20Junk%20fees%20harm%20consumers,linchpin%20of%20our%20economic%20system. .
[4] *FTC Warns Hotel Operators that Price Quotes that Exclude 'Resort Fees' and Other Mandatory Surcharges May Be Deceptive*, FED. TRADE COMM'N (Nov. 28, 2012), https://www.ftc.gov/news-events/news/press-releases/2012/11/ftc-warns-hotel-operators-price-quotes-exclude-resort-fees-other-mandatory-surcharges-may-be.
[5] Trade Regulation Rule on Unfair or Deceptive Fees, 90 Fed. Reg. 2066 (Jan. 10, 2025), available at https://www.federalregister.gov/documents/2025/01/10/2024-30293/trade-regulation-rule-on-unfair-or-deceptive-fees.

short-term lodging."[6]

22.    The FTC provides examples of mandatory fees and charges that must be included in the total price under the Rule. Relevant here, the FTC explains when "[a] resort charges a nightly rate of $199, plus a mandatory resort fee of $39 per day[,] [t]he required resort fee must be included in the total price[.]"[7]

23.    The Rule makes sense in light of consumer protection and predatory practices by companies like Defendant. Research has shown that consumers spend more money on the same goods when they are not shown the total price up front.[8] Therefore, by omitting junk fees from the advertised cost of a hotel room, hotels can reap significantly more profits from every customer who ultimately purchases these rooms with the added junk fees.

24.    Furthermore, the FTC has argued that consumers who wish to compare the true prices of goods incur additional search costs when the full price is not disclosed up front due to the time it takes to click through multiple pages to find the true cost of a product.[9] These search costs cost a consumer time, effort, and money.

25.    By not properly disclosing a price with all fees included, "consumers are forced to incur higher total search and cognitive costs" or "make an incomplete, less informed decision that may result in a more costly room."[10]

---

[6] *Id.*
[7] *The Rule on Unfair or Deceptive Fees: Frequently Asked Questions*, FED. TRADE COMM'N, https://www.ftc.gov/business-guidance/resources/rule-unfair-or-deceptive-fees-frequently-asked-questions#lodgingcovered (last visited June 25, 2025).
[8] Trade Regulation Rule on Unfair or Deceptive Fees, n.5, *supra*.
[9] *Id.*
[10] Mary W. Sullivan, *Economic Issues: Economic Analysis of Hotel Resort Fees*, BUREAU OF ECON. FED. TRADE COMM'N (Jan. 2017), https://www.ftc.gov/system/files/documents/reports/economic-analysis-hotel-resort-fees/p115503_hotel_resort_fees_economic_issues_paper.pdf.

26.     Drip pricing and junk fees rob consumers of a fair choice when they are selecting a hotel room and ultimately forces them to pay a higher price or incur higher search costs than they otherwise would have.

27.     Large hotel chains know that this marketing practice is both effective and profitable. In online ticket sales for example, customers subjected to hidden fees spend up to 21 percent more than those shown the true price upfront.[11]

28.     In 2022, the American Hotel & Lodging Association found that only 6% of hotels nationwide charge a mandatory resort/destination/amenity fee, but the White House Council of Economic Advisors estimates the revenue of these fees to be approximately $3.3 billion.[12]

29.     Therefore, the Hotels who do take part in this deceptive practice, including Defendant, have been rewarded significantly for misleading their customers.

### IHG's Drip Pricing

30.     OTAs allow consumers to shop for and compare multiple hotel rooms and hotel brands with the click of a button. Thus, consumers believe they are making informed decisions about where to stay based on the advertising and marketing materials found on OTAs.

31.     IHG capitalizes on these benefits provided by OTAs by listing many of its hotel brands on OTAs.

32.     The price of a hotel room is one of the most important factors that consumers take into account when selecting a hotel.[13]

---

[11] *The Price Isn't Right…*, n.3, *supra*.

[12] *Id.*

[13] Alex Temblador, *Study Shows Hotel Price and Ratings More Important Than Brand Name*, TRAVELPULSE (Apr. 19, 2019 2:41 PM ET), https://www.travelpulse.com/news/hotels-and-resorts/study-shows-hotel-price-and-ratings-more-important-than-brand-name#:~:text=Price%20is%20by%20far%20the,attention%20when%20selecting%20a%20property.

33.     IHG capitalizes on this fact by positioning itself as having cheaper rooms, when in reality, its rooms contain hidden fees, and/or are more expensive than the advertised price.

34.     IHG has continued to use drip pricing techniques to advertise their hotel rooms on OTAs such as hoteltonight.com, despite the past guidance from the FTC.

35.     When a person searches for a hotel on OTA websites such as hoteltonight.com, they are presented with numerous options that match their destination and date. These options include major hotels, including IHG brands such as the Candlewood Suites Times Square.

36.     At this initial stage, the quoted daily room rate for each hotel does not include or mention the mandatory fees that a consumer must later pay. Therefore, a reasonable consumer would assume that the price shown on this screen is the price they will pay per night for the hotel room. *See* Figure 1.

**Figure 1**



37.     After a consumer selects a hotel room based on the initial price that excludes additional taxes and fees, they are presented with another screen giving more information about

the hotel. On this screen, the consumer can select "book now" and it provides the same, initial price that excludes taxes and fees, as seen on the previous screen. *See* Figure 2.

**Figure 2**



38.    If the consumer is still content with the initial price that, unbeknownst to them, excludes taxes and fees, they can click "book now" and will be directed to another page, labeled as "room summary." Only after the consumer clicks through two pages to reach the "room summary" page are they shown the true price of the hotel room. *See* Figure 3. For the Candlewood room selected in Figures 1 and 2, the initial advertised price was $151, after clicking through to the "room summary" they are met with true price of $195 per night. *See* Figures 1-3.

39.    After being baited with a price of $151 per night, consumers reach the checkout page thinking that this will be the final price they pay, only to be ambushed with numerous junk fees. The "room summary" page shows a picture of the room, details of the reservation, and the

fees and total prices. The consumer is shown the $151 price they thought they were paying, followed by a vague line item entitled "Taxes & Fees" totaling $26.

40.     The phrasing "Taxes & Fees" is vague and misleading because it leads a consumer to believe that these are government mandated costs and does not delineate how much of the $26 are actually taxes rather than fees being collected by IHG and hoteltonight.com. *See* Figure 3. These hidden fees are junk fees because a consumer is required to pay them in order to make their purchase or hotel booking but have been hidden throughout the buying process.

**Figure 3**



41.     These are not the only junk fees that a consumer is charged on this page. Following the "Due Now" price, consumers are met with another vague fee labeled as "Due at Hotel." Next to this line item there is a small, clickable question mark button.  *See* Figure 4.

**Figure 4**



42.    *After* a consumer selects the question mark button, she is presented with a popup message saying that "a hotel-imposed resort fee of $17.21 per night will be collected by this hotel at check-in or check-out." *See* Figure 5. The page does not say what is included in these "resort fees." These "hotel-imposed resort fees" are the exact type of deceptive junk fees the FTC has been trying to regulate since 2012 because they were only presented to the customer after clicking through three screens.

**Figure 5**



43.    All these tactics are detrimental to consumers because the advertised total for IHG's hotel rooms is not the true total. Consumers may not be able to see or find the details of the charges, and thus do not know that they may be required to pay additional fees once they arrive at the hotel. Had customers been presented with the full price up front, they would have been better able to compare IHG hotels to other hotels charging their fees up front. By the time the consumer reaches the final checkout page, they have already exhausted time and effort to find the best priced hotel and therefore may accept this higher price rather than continuing to search for another hotel room.

44.    Because of IHG's deceptive junk fees practices on hoteltonight.com, a consumer also cannot reasonably compare the total price of a room against the price of rooms listed by other hotels on other OTAs.

45.    IHG benefits from deceptive practices on hoteltonight.com and other OTAs it utilizes by baiting price-conscious consumers with lower prices and hiding their "resort fees" in vague line items only viewable to a consumer after they have clicked through multiple pages.

46.    Defendant does not disclose any junk fees up front when advertising their hotel rooms on hoteltonight.com and other OTAs it utilizes and instead uses drip pricing tactics to trick customers into thinking that they are getting a bargain price, when in reality, they are not.

47.    These practices have misled and deceived consumers out of a fair choice when shopping for hotel rooms and have allowed Defendant's to reap massive profits.

## CLASS ACTION ALLEGATIONS

48.    **Nationwide Class:**  Plaintiff seeks to represent a class defined as all individuals in the United States who booked an IHG Hotel on an OTA. Excluded from the Nationwide Class is any entity in which Defendant has a controlling interest, and officers or directors of Defendant.

49.    **Pennsylvania Subclass:** Plaintiff Cunningham seeks to represent a class defined as all individuals who booked an IHG Hotel on an OTA while in the Commonwealth of Pennsylvania.  Excluded from the Pennsylvania Subclass is any entity in which Defendant has a controlling interest, and officers or directors of Defendant.

50.    Members of the Nationwide Class and Subclass are so numerous that their individual joinder herein is impracticable.  On information and belief, members of the Nationwide Class and Subclasses are at least in the hundreds of thousands.  The precise number of Nationwide Class and Subclass members and their identities are unknown to Plaintiff at this time but may be determined through discovery.  Nationwide Class and Subclass members may be notified of the pendency of this action by mail, email, and/or publication through the distribution records of Defendant.

51.    Common questions of law and fact exist as to all Nationwide Class and Subclass members and predominate over questions affecting only individual Nationwide Class and Subclass members.  Common legal and factual questions include, but are not limited to:

> (a) whether Defendant intentionally and knowingly misrepresented material facts with an intent to mislead in violation of Penn. Unfair Trade Practices and Consumer Protection Law, §§ 201-1 *et seq*.;
>
> (b) whether the marketing and advertisements for the IHG hotel rooms included false and/or misleading statements or omissions;
>
> (c) whether Defendant was unjustly enriched; and
>
> (d) whether Defendant's conduct was fraudulent.

52.    The claims of the named Plaintiff are typical of the claims of the Nationwide Class and Subclass in that the named Plaintiff and the Nationwide Class and Subclass sustained damages as a result of Defendant's uniform wrongful conduct, based upon Defendant's failure to disclose the total cost of its hotel rooms advertised and sold on an OTA.

53.    Plaintiff is an adequate representative of the Nationwide Class and Subclass because her interests do not conflict with the interests of the Nationwide Class and Subclass members she seeks to represent, she has retained competent counsel experienced in prosecuting class actions, and she intends to prosecute this action vigorously.  The interests of Nationwide Class and Subclass members will be fairly and adequately protected by Plaintiff and her counsel.

54.    The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Nationwide Class and Subclass members.  Each individual Nationwide Class and Subclass member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish

Defendant's liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

### COUNT I
**Unjust Enrichment**
**(On Behalf Of The Nationwide Class and Pennsylvania Subclass)**

55.    Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

56.    Plaintiff brings this claim individually and on behalf of the members of the Nationwide Class and Pennsylvania Subclass against Defendant.

57.    Plaintiff and Nationwide Class Members and Pennsylvania Subclass Members conferred benefits on Defendant by purchasing and booking Defendant's hotel rooms.

58.    Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff and Nationwide Class Members and Pennsylvania Subclass Members' purchases of its hotel rooms. Retention of those moneys under these circumstances is unjust and inequitable because Defendant falsely represented a lower discounted bargain hotel rental price online than what consumers were actually charged.

59.    These misrepresentations caused injuries to Plaintiff and Nationwide Class Members and Pennsylvania Subclass Members because they would not have continued on to

purchase or book Defendant's hotel rooms if the true facts were known to them upon first viewing Defendant's advertised prices.

60.     Because Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiff, Nationwide Class members and Pennsylvania Subclass Members is unjust and inequitable, Defendant must pay restitution to Plaintiff and Nationwide Class Members and Pennsylvania Subclass Members for its unjust enrichment, as ordered by the Court.

### COUNT II
**Fraud**
**(On Behalf of the Nationwide Class and Pennsylvania Subclass)**

61.     Plaintiff realleges and reincorporates by reference all paragraphs alleged above.

62.     Plaintiff brings this claim individually and on behalf of the Nationwide Class and Pennsylvania.

63.     At the time Plaintiff and members of the Class and Subclass went to the Website and clicked the "Book Now" option, they were presented with a price they believed to be the total price of the hotel. However, Defendant did not disclose, but instead concealed the total price, until after Plaintiff and members of the Class and Subclass navigated through numerous screens.

64.     Defendant knew it was making fraudulent representations and omissions as to the actual price of the hotel booking in order to bait Plaintiff and members of the Class and Subclass in.

65.     Moreover, Defendant combines "Taxes & Fees" on the itemized summary page to fraudulently misrepresent what Plaintiff and members of the Class and Subclass are required to pay based on government tax requirements versus fees being collected by IHG and/or hoteltonight.com.

66.     Defendant also knew that this distinction and concealment of the total price from

the onset and lack of specification between taxes and fees was material, and that a reasonable consumer would rely upon Defendant's omissions and misrepresentations in making purchasing decisions.

67.    Plaintiff and members of the Class and Subclass did not know—nor could they have known through reasonable diligence—that Defendant was misrepresenting the actual price of the hotel before being baited into the purchase process.

68.    Moreover, Plaintiff and members of the Class and Subclass did not know—nor could they have known through reasonable diligence—how much Defendant was collecting in fees versus how much was required taxes.

69.    Plaintiff and members of the Class and Subclass would have been reasonable in relying on Defendant's misrepresentations in making their purchasing decisions (i.e. proceeding to the final payment page).

70.    Plaintiff and members of the Class and Subclass had a right to rely upon Defendant's representations.

71.    Plaintiff and members of the Class and Subclass sustained damages because of their reliance on Defendant's and misrepresentations, thus causing Plaintiff and members of the Class and Subclass to sustain actual losses and damages in a sum to be determined at trial, including punitive damages.

### COUNT III
**Violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law,**
**73 P.S. §§ 201-1 *et seq*.**
**(On behalf of the Pennsylvania Subclass)**

72.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

17

73.     Plaintiff Cunningham brings this claim individually and on behalf of the members of the Pennsylvania Subclass against Defendant.

74.     Plaintiff Cunningham, members of the Pennsylvania Subclass, and Defendant are "Persons" within the meaning of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201-2(2).

75.     73 P.S. § 201-3 declares unlawful "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Defendant has violated numerous provisions of the UTPCPL.

76.     73 P.S. § 201-2(4)(ix) prohibits "[a]dvertising goods or services with intent not to sell them as advertised." By marketing the hotel rooms with a certain listed price, such that a reasonable consumer would believe that they would pay that listed price, when in reality Defendant charges more for the hotel rooms than originally advertised, Defendant has violated 73 P.S. § 201-2(4)(ix).

77.     73 P.S. § 201-2(4)(xxi) prohibits "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." By marketing the hotel rooms with a certain listed price, such that a reasonable consumer would believe that they would pay that listed price, when in reality Defendant charges more for the hotel rooms than originally advertised once a consumer reaches the final page for purchase, Defendant has created a likelihood of confusion and misunderstanding.

78.     Defendant knows or reasonably should know that the hotel rooms cost more than the initial advertised price on OTAs, and that Plaintiff Cunningham and members of the Pennsylvania Subclass would reasonably and justifiably rely on the advertised price when booking Defendant's hotel rooms.

79.     Defendant has intentionally and knowingly misrepresented material facts with an intent to mislead Plaintiff Cunningham and members of the Pennsylvania Subclass.

80.     The above unlawful, unfair, and deceptive acts and practices by Defendant were immoral, unethical, oppressive, and unscrupulous.  These acts caused substantial injury to Plaintiff Cunningham and members of the Pennsylvania Subclass that they could not reasonably avoid, and this substantial injury outweighed any benefits to consumers or to competition.

81.     Defendant's advertised hotel room prices were material to Plaintiff Cunningham and members of the Pennsylvania Subclass because they relate to the price a consumer is paying. A reasonable consumer would attach importance to such representations and would be induced to act thereon in making purchase decisions.

82.     As a direct and proximate cause of Defendant's conduct, Plaintiff Cunningham and members of the Pennsylvania Subclass suffered damages as alleged above.

83.     Plaintiff Cunningham and members of the Pennsylvania Subclass seek an order awarding attorneys' fees and any other just and proper relief available under the UTPCPL.

84.     Plaintiff Cunningham and members of the Pennsylvania Subclass also seek relief under 73 P.S. § 201-9.2, including, but not limited to, actual damages or $100 per class member, whichever is greater, treble damages, and attorneys' fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the members of the Nationwide Class and Pennsylvania Subclass prays for judgment as follows:

(a)     For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Pennsylvania

Subclass, and Plaintiff's attorneys as Class Counsel to represent the Class and Subclass;

(b)     For an order declaring that Defendant's conduct violates the statutes referenced herein;

(c)     For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

(d)     For compensatory and statutory damages in amounts to be determined by the Court and/or jury;

(e)     For prejudgment interest on all amounts awarded;

(f)     For an order of restitution and all other forms of equitable monetary relief;

(g)     For injunctive relief as pleaded or as the Court may deem proper; and

(h)     For an order awarding Plaintiff and the Classes their reasonable attorneys' fees and expenses and costs of suit.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b)(1), Plaintiff demands a trial by jury of all issues so triable.

Dated: June 30, 2025                      Respectfully submitted,

*/s/ Andrew W. Ferich*
Andrew W. Ferich (PA I.D. 313696)
**AHDOOT & WOLFSON, PC**
201 King of Prussia Road, Suite 650
Radnor, PA 19087
Telephone: (310) 474-9111
Facsimile: (310) 474-8585
Email: aferich@ahdootwolfson.com

Philip L. Fraietta
Julian C. Diamond
Caroline C. Donovan
**BURSOR & FISHER, P.A**.

1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email:  pfraietta@bursor.com
          jdiamond@bursor.com
          cdonovan@bursor.com

*Attorneys for Plaintiff and the Putative Class*